1805.

DENSLOW
v.
MOORE.

ocal meaning to the words, *threats* and *flattery*, and shews clearly, that they were unlawful, and designed to procure the execution of a will, which, it is to be presumed, could not have been obtained without them. The meaning of these words being thus obvious, it was not necessary for the Court to find it in terms. The facts found warrant the judgment. To have found further, that the threats and flattery were unlawful, would have been to find a legal inference, and only giving an exposition of the meaning of the terms.

## Hosmer *v.* Hollenbeck.

### In the Court below,

THOMAS HOSMER, *Plaintiff ;* SAMUEL HOLLENBECK, ELIzUR WRIGHT, SAMUEL ROBBINS, and AMMI R. ROBBINS, *Defendants,*

A. declared that B. bargained with him about a piece of land, and gave him a writing, consisting of a bond in common form, and a condition annexed thereto, that if A. should not pay to B. 160*l.* by a limited time, or if A. should pay that sum, by that time, and B. should fail to execute a deed to A. by the same time, the bond should be void, with a further clause, requiring B. to give A. or discount with him 20*l.* at or before the same time; held that A. could not recover of B. the 20*l.* without shewing that he had paid the 160*l.*

A written contract without consideration is not valid. *Semble.*

THE plaintiff declared, that the defendants, and Jeremiah Hogaboom, and Andrew Frank, on the 30th day of May, 1797, bargained with the plaintiff about a certain piece of land, on which there was a valuable mill-seat, and saw-mill, near Ousatonick river, and gave him a writing, which consisted of a bond, in common form, for 320*l.* and a condition annexed thereto, in the following words : " The condition of the " above obligation is such, that it is the duty of the " above bounden Jeremiah, Samuel, Andrew, Elizur, Am- " mi, and Samuel Robbins, on the 1st day of July, 1799, to " give to the said Thomas, his heirs, or assigns, a good war- " rantee deed of all the land contained in a certain deed, " that they the said Jeremiah, Samuel, &c. have this day " received of George Rowland, except the *Little Falls* so " called, that is, a piece of land"—[particularly describing it]

1805.

HOSMER
*v.*
HOLLEN-
BECK.

" together with all the privileges of the river adjoining, ex-
" clusive of this, that they the said Jeremiah, Samuel, An-
" drew, Elizur, Ammi, and Samuel Robbins, their heirs, &c.
" ought to give said Hosmer, or his heirs, &c. a deed, on
" the 1st day of July, 1799, provided the said Hosmer, his
" heirs, &c. shall well and truly pay unto the said Jeremi-
" ah, Samuel, Andrew, Elizur, Ammi, and Samuel Rob-
" bins, or their heirs, &c. one hundred and sixty pounds,
" lawful money, with its lawful interest, on or before the
" said 1st day of July, 1799. Now, if the said Hosmer, his
" heirs, &c. shall not pay unto the said Jeremiah, Samuel,
" Andrew, Elizur, Ammi, and Samuel Robbins, or their
" heirs, &c. by the said first day of July, 1799, the said one
" hundred and sixty pounds, with the lawful interest, then
" the above obligation is to be null and void : But if the said
" Hosmer, his heirs, &c. shall well and truly pay said one hun-
" dred and sixty pounds, with the lawful interest, by said time,
" to said Jeremiah, Samuel, Andrew, Elizur, Ammi, and
" Samuel Robbins, their heirs, &c. and they should refuse
" to give the said Hosmer, his heirs, &c. a good warrantee
" deed of the above land, (excepting as above excepted)
" this obligation to be in full force. They, the said Jeremi-
" ah, Samuel, Andrew, Elizur, Ammi, and Samuel Robbins,
" their heirs, &c. are, on the said day of July, 1799, or be-
" fore, to give unto said Hosmer, or his heirs, &c. twenty
" pounds, lawful money, or discount with him, &c. the said
" sum. Said Hosmer is likewise to have full liberty to re-
" move said saw-mill from said excepted piece of land, on,
" or any time before, said 1st day of July, 1799." [Signed
and sealed.] The plaintiff then averred, that the above men-
tioned sum of twenty pounds had not been paid, nor in any
way discounted with him ; and that the defendants, their
promise aforesaid not regarding, had never performed the
same, though often requested and demanded ; to his dam-
age, &c.

To this declaration there was a demurrer ; and, by the
Superior Court, it was adjudged insufficient.

The general error was assigned.

*Smith*, (of Woodbury,) and *Gould*, for the plaintiff.

The principal question, arising upon the record, and the only one, of which we are apprized, is, whether the plaintiff's right to recover of the defendants the 20*l.* for which the action is brought, is *unconditional*, or *dependent* on his first paying to them 160*l.* the consideration of the intended purchase. The clause of the instrument, on which the action is founded, is, as we construe it, an entire, distinct, and independent agreement, by which the defendants are bound, in *all* events, to pay to the plaintiff, or discount with him, the sum of 20*l.* on or before the first of July, 1799. If this is the true construction of the clause, the plaintiff has a clear right of action. But it will be urged for the defendants, and so the Superior Court decided, that the plaintiff's right to this sum was never to accrue, but upon his completing the purchase of the land, by paying to them the 160*l.*—That this latter is not a correct construction of the clause in question, will appear from several obvious considerations :

1. The *words* of the clause are altogether unconditional, and express no reference whatever to a performance, by either party, of any of the acts, mentioned in other parts of the instrument. The literal import of the stipulation, then, would clearly be violated by the construction adopted by the defendants ; but, from the face of the whole instrument, taken together, here is nothing discoverable, which shews, or tends to shew, that the literal construction is not strictly conformable to the intention of the parties.

2. The particular *location* of the clause, and the *connexion* in which it stands, furnish a strong argument against the construction for which the defendants contend. It is preceded by a penal bond, conditioned for the conveyance

of a tract of land to the plaintiff on his paying to the defendants 160*l.* The penal part is in common form; the condition, on which the penalty is to be defeated, is then explained by a recital of the *duty* intended to be created on the defendants; this recital is followed by a formal defeasance; *after* which the clause under consideration is introduced. It is manifest, that the object of the recital alluded to, was to embrace and explain *all* the particulars of the intended condition or defeasance: But both the recital and defeasance are silent as to the 20*l.* The usual and appropriate words, in which conditions *conclude*, are employed, and the bond is *complete* in all its parts, *before* the clause in question is introduced: A circumstance, which plainly proves, that the clause itself was intended to form a distinct agreement, and not a constituent part of the bond.

3. The same result is deducible from the connexion, in which the clause stands, with the agreement, or licence, which immediately follows it. According to that agreement, the plaintiff is at liberty to remove the saw-mill from the land, on, or at any time *before* the first of July, 1799. It will be admitted, that this last agreement forms no part of the *bond;* and that the right acquired under it, by the plaintiff, is not, in any degree, dependent on his paying the stipulated consideration for the land. But, as the 20*l.* is also to be paid or discounted on or *before* the 1st of July, 1799, and as the two clauses are immediately connected, and both expressed unconditionally; the Court must adopt a construction altogether arbitrary, to treat one as conditional, when the other is confessedly absolute.

According to this view of the subject, the case is the same in principle, as it would be, if, at the bottom of the bond, the defendants had executed to the plaintiff a promissory note, or a bill of exchange, in common form. Its being upon the same paper with the bond, would be a circumstance altogether immaterial. There may, doubtless, be an indefinite

E

number of distinct and independant agreements, comprised in one instrument. But,

4. What seems conclusive, is, that the construction, which we oppose, is absolutely inconsistent, not only with the obvious import, but with the very terms, of the bond. The plain meaning of that part of the instrument, which may properly be called the condition, or defeasance, is, that, on the plaintiff's paying to the defendants 160*l.* on or before a certain day, they shall, to save the penalty, convey to him a tract of land. According to the construction, adopted by the defendants, however, they are bound, on receiving the 160*l.* to repay to him 20*l.* of the sum, as well as to convey the land ; but are under no obligation to do either, *until* the plaintiff pays the 160*l.* The precise effect of this construction is to alter the terms of the condition, by reducing the sum of one hundred and sixty pounds, expressed in it, to one hundred and forty. For, it can make no difference, whether one pays 160*l.* and immediately receives back twenty, or pays but one hundred and forty, in the first instance.

*Daggett* for the defendants.

This is not an action on the bond. The declaration is entitled *a plea of the case ;* and concludes with alleging, that the defendants had not performed their *promise.* If the plaintiff, upon this record, can recover, it must be from the terms of the condition. But an action on the condition of a bond is novel in practice, and unsupported by principle.

The condition embraces the whole of the writing annexed to the bond. The several clauses are connected, and relate to but one object,—the purchase and conveyance of the land. If the plaintiff should not pay the 160*l.* by the time limited, the bond was to be void: If he should pay, and the defendants should give a deed, and should repay or discount 20*l.* in that case also, the bond was to be void. A forfeiture could be incurred by the defendants only upon their refusing

to give a deed, and to repay or discount 20*l. after* the plaintiff had paid the 160*l.* Until the latter act has been done by the plaintiff, no liability can attach upon the defendants ; on no part of the writing set out in the declaration can an action be sustained against them.

But, if the clause in question is a distinct covenant, unconnected with the rest of the instrument, it is invalid for want of consideration. A written promise requires a consideration no less than a parol one. See 1 *Pow. Contr.* 340, 341.

*Smith*, in reply, as to the last point, contended, that reducing a contract to writing, in England, precludes any inquiry into the consideration ; and cited the opinions of Justice WILMOT, and Lord MANSFIELD, in *Pillans and Rose v. Van Mierop and Hopkins*, 3 *Burr.* 1663. 2 *Bla. Com.* 446. In Connecticut, the reason why that rule should prevail is stronger than in England ; because all written contracts are here regarded as specialties. Sealing with us is entirely useless. Merely to put an agreement in writing is sufficient, without other proof of a consideration.

BY THE COURT, TREADWELL, *Lieut. Gov.* ELLSWORTH, AUSTIN, GRISWOLD, and HOSMER, *Assts.* dissenting,

The judgment was affirmed.

1805.

HOSMER
*v.*
HOLLEN-
BECK.